Good morning. May it please the court. My name is Brandon Jensen and I'm here on behalf of the appellants and the plaintiffs. Even though the Act of 1891 generally provides for rights-of-way through national forests, a vested right-of-way is nevertheless subject to regulation by the United States Forest Service. Thus, issuance of a special use permit in and of itself does not announce a claim of the United States that's adverse to the interests of the right-of-way holder. There is simply overwhelming authority both statutory, regulatory, and precedent from this court that supports the proposition that a right-of-way holder cannot even exercise his rights without first obtaining approval of their operation in the manner specified by the federal regulations. For instance, the Act of 1891 itself states that no such right-of-way shall interfere with the proper occupation of the public lands by the government. The Act of 1891 itself specifically requires permission and approval from the United States Forest Service before a right-of-way holder can either commence construction of the facilities on the public lands, or even exercise his right to use and occupy those facilities pending approval of some sort of permit, authorization, or plan of operations, or some other kind of authorization from the federal government that would allow the permit holder to proceed forward. Furthermore, the Act of 1891 is further qualified by various organic acts of the United States Forest Service, such as the Act of 1901, which specifically conditioned use and occupancy of rights-of-way upon compliance with reasonable regulations. The Forest Service is required not only by the Constitution of the United States, but various acts of Congress to regulate use and occupancy of our national forests and protect our forests from destruction. All of that authority suggests that a right-of-way holder, a vested right-of-way holder, has to comply with reasonable rules and regulations and has to agree and accede to those rules and regulations before he can even use or occupy the facilities at issue. Okay, now, so what is the relief you're ultimately seeking in this case, then? If you agree with all of that, what is it you're trying to be relieved from under your quiet title action? Under the quiet title action, we're seeking, the United States governor, we're seeking from the court to determine whether or not we do, in fact, have a vested right-of-way under the Act of 1891. The permit that was at issue has expired, and the question became whether the terms and conditions in the new permit to be issued to the permittee are reasonable in light of whether or not the permittee does, in fact, have a vested right-of-way. Which is the new permit? There was a permit in 1973, wasn't there? Yes, there was, Your Honor. Is that the one you're talking about, or something subsequent to it? I believe that permit has been renewed twice, and the most recent permit expired in 2006. And your argument is that... My argument is that in order to determine when the permittee sits down with the Forest Service whether the new terms and conditions are, in fact, reasonable, given his vested right-of-way, one would have to determine whether, in fact, he does have a vested right-of-way, or one would have to determine whether or not he's simply operating the facilities at the discretion of the Forest Service. In the 1973 permit, it had an abandonment provision that said if you abandon, your client abandons, you've got to remove the whole structure, the dam has to go away, and all of that. That's correct. Is that consistent or inconsistent with having a vested right-of-way? I believe that's entirely consistent with the Forest Service having regulatory authority over the vested right-of-way. If one is to have regulatory authority over the vested right-of-way, then one must also have the authority to enforce those terms and conditions and punish for noncompliance. I'm having trouble trying to understand what you're seeking. You say you need to have it determined to be a vested right-of-way, but even under your assumption that it's vested, they could put the condition in that if you cease operations, they can make you tear down the structure. Correct. I'm just trying to get a practical sense of what's at stake here. The structure has to have some sort of permit or authorization from the federal government, irregardless of whether the right-of-way is vested or not. What will be the difference, if you get declaration of a vested right-of-way, between what's gone on in the past and what's... In other words, have you come up against anything in your discussions with the Forest Service that these reasonable, what they claim are reasonable regulations, are at issue in some fashion? I believe that the new permit that was being proposed to my client had new terms and conditions never before seen, which instigated the current... What were those? I believe that there were new terms and conditions on when the reservoir could be accessed. I think currently it can be accessed year-round, and now new terms and conditions sought to limit that to certain seasons. Right, but I mean, you're just saying, how would that be determined as to whether it's reasonable, whether or not it was vested or not? I mean, in the past, was the abandonment provision in the original permit? Wasn't that a new term and condition? That was a new term and condition that came about in 1973. Right, so if the issue is whether or not a new term or condition can be imposed in a re-permitting process, why didn't that issue then come up in 1973? Because the abandonment provision doesn't affect current use. It doesn't affect day-to-day operations. Well, it certainly implies that you don't have a vested interest, that you can maintain that easement forever. And certainly having to tear down the structure implies that if you abandon it, you're never going to be able to resurrect it. Well, sure, that abandonment... Excuse me, you come along later, you've sold off the entitlement, the easement entitlement, transferred, assigned it, whatever, and they decide, you know, we really now do want that dam again, and we have a vested easement that we've had since the early part of the 20th century, and we can come back in, and subject only to reasonable rules and regulations, we're entitled to rebuild that. Right? I would separate abandonment from termination of the permit. If a permittee abandons the facilities, then I would say that they have abandoned their easement as well under the Act of 1973. Well, how do you reconcile, though, Paragraph 16 of the 1973 permit, which says, this permit may be terminated upon breach of any of the conditions herein or at the discretion of the regional forester or the chief of the forest service? So it really allows the entire permit, it sounds like to me, reading that, to simply be taken away at the discretion of the federal government. So how is that consistent with a vested easement? Paragraph 16 is different than the abandonment provision. Yes, it is. Because even if the permit itself is terminated for any reason, it doesn't necessarily mean that the easement itself has been terminated. Rather, it just means that the authority under which that permittee can use his vested right-of-way has changed. Well, how is there a vested right-of-way if there's no ability to use it? It's a revocable permit, and so it just seems odd to say you have a vested right, but someone else has complete control over whether you can exercise the exact thing that you want to do. That doesn't make sense to me. And the precedent from this Court is unanimous that that's the way it exists, whether you're talking about a road or a trail or snowmobiling in a national park, whether or not you have a vested right-of-way, the government has the right to regulate that use and occupancy and determine under what conditions you can make use of it. Including no conditions at all, you can't make use of it. That's what this paragraph says to me, is that it allows the government to decline to allow any use, it would seem to me. And a related question to that is that puts landowners on the ground in an awkward position of having to decide when they can bring suit against the government. Because the government can also claim, look, that's contingent on a future undefined event. We may or may not terminate that permit. No, but the reservation of the right to exclude you is existing from the moment the 1973 permit goes into effect. And apparently you haven't told us what it is, but if we're now fast-forwarding to today, what is it in the proposed permit that makes it suddenly ripe? There were terms and conditions in the new permit that affected day-to-day activities on the ground, how they used the reservoir today and tomorrow and the next day. I would argue that the abandonment provision, the termination provision, come into effect later in the future. They don't affect day-to-day operations. And the government has the right to regulate or to enforce that use. If you fail to comply with the terms of your permit, if you allow these facilities to fall into disrepair and endanger other property and the environment, then the government certainly has the right to come in and shut you down. And even if it's a threat to other property and individuals to demand that the facilities be removed. But the permit terms and conditions cannot prohibit use or amount to such restrictions that they do, in fact, prohibit use. But they can, in fact, regulate use. Except that that's why I was so drawn to Paragraph 16, because it basically says they can prohibit use by simply, at their discretion, terminating the permit, period. And if there is no permit, there's no right to use. But that does not necessarily suggest that another permit is not forthcoming. That does not suggest that the easement itself is no longer invalid. It may say, look, you are such a poor permittee. You have been such a poor steward of the public lands. We don't want you out there anymore, and we're going to terminate this permit. But if you want to sell the facilities to somebody else, we'll certainly consider transferring the permit. Terminating the permit does not necessarily mean that the easement itself has gone away. There could be any number of reasons that the government wants to terminate the permit or, with all due respect, insist that the facilities be removed and the public lands restored. Counsel, could we talk briefly about the acquisition of the easement? Absolutely. So is your position that the easement was acquired automatically? Or how, in your view, was the easement acquired? Our understanding of the precedent and the statutes and the regulations is that mere construction of the facilities does, in fact, acquire an easement. There is a difference between whether or not the facility was constructed on surveyed lands and unsurveyed lands. If the facility was on surveyed lands, you have to have got permission from the Department of the Interior and all your paperwork had to be stamped and approved. If the facility lied on unsurveyed lands, there was no method, there was no paperwork for that permit to be approved. Or, alternatively, no easements were allowed. If there is no provision for easements on unsurveyed land, then a reasonable construction of the statute is that there was no contemplation of easements on those lands. The statute would seem to suggest that. However, the regulations and the case law from that time period specifically say if you're building a facility on unsurveyed lands, you don't need our permission and an easement will arise as soon as construction is done. Well, when you say the case law, it's not case law that's binding on us. That would be true, yes. It's case law coming from the Department of the Interior itself. Unless there are any further questions, I'd like to reserve the remainder of my time. You definitely may do that. Thank you. Good morning, Your Honors. My name is James Kilborne from the Department of Justice, representing the Secretary of Agriculture. I agree with Judge Fischer's comments here, as I understand them. It seems to me that the appellant here has conceded so much in his briefs as to what the Agriculture Department can do under his version of imposing reasonable terms and conditions that he essentially has wiped away any difference between what the Forest Service can do to regulate a statutory easement versus what it can do to regulate in a special use permit. And I think that he's wrong in that regard. And I think what he does not recognize is the fundamental difference between the two types of authorizations to use federal lands. Here, there has been a nearly consistent and longstanding history in terms of how the Interior Department and the Agriculture Department have viewed grants of statutory easements versus authorization directly from the Agriculture Department to use the land pursuant to a special use permit. In this case, do you concede that the plaintiffs have a valid easement? No, we do not concede that. Now, let me ask you this. If there is no valid easement, do we get to the other issues at all? Yes, because this case was dismissed on statute of limitations grounds. The plaintiff here filed a Quiet Title Act claim seeking a declaratory judgment that he and his predecessors had a valid easement under the 1891 Act. That's why I asked you the question. If they don't have a valid easement, does it matter about the statute of limitations? They never would have a valid claim, statute of limitations notwithstanding. Well, the case was dismissed before the court even addressed the merits question of whether he did have a valid 1891 Act easement. And we filed a motion to dismiss saying the court doesn't have jurisdiction to reach that question because there was no proper waiver of sovereign immunity because he didn't file suit within the 12-year statute of limitations provision provided for in the Quiet Title Act. So for purposes of this case, are we to assume that there is a valid easement? I think in terms of looking at whether the government sufficiently put the plaintiff on notice, yes, I think you have to assume his view that he has a valid easement. But I do want to emphasize that we vehemently contest that. And in our view, the statute did not authorize a statutory easement on unsurveyed lands. And it's uncontested that these are unsurveyed lands. But we do believe that there were many, many instances here where the government took sufficient action to put the plaintiff and his predecessors on notice that it was asserting an interest adverse to his claim of a statutory easement. Now, his argument was in the two provisions, particularly paragraph 16, but the abandonment as well, that both of those were future contingencies. And if they had tried to bring a quiet title action at that time, the government would have simply said this is all hypothetical and that's not right, so on and so forth. I think I'm understanding his argument, but what do you say to that? There certainly is a future contingency as to whether events would have occurred that would trigger termination or revocation or abandonment. But it is very clear what the government's position would be if those future circumstances did occur. The government said you would have no right to be there. We can, we have the option to revoke this special use permit at our sole unilateral discretion. And if that happens, the consequence of that is you have to remove completely from the property. And even though the triggering events might be an uncertain future action, the consequence of that is very clear and there is no uncertainty as to that. And so we think that that is sufficient to have put the plaintiff on notice. And that was very clear in 1973, and it was repeated in 73 and the 1985 Act. And this was not mere reasonable regulation. When you say 1985 Act, are you referring to the permit? I mean 1985 permit, excuse me, yes. This is not reasonable regulation of a statutory grant of an easement. An easement of the 1891 Act is an easement in perpetuity. There was no termination provision. And the plaintiff's characterization that the government can terminate a special use permit but then contemplate that there will be some future forthcoming action that would allow him to come back onto the property is simply not supported by the facts here. There was no statement in any of these permits, the 73 permit or the 85 permit, that if we revoke, we will enter into negotiations with you to find some other way for you to use your preexisting easement. There was none of that in this case. It was clear and direct that we can revoke at our own discretion, the Forest Service can revoke at its own discretion, and the consequence of that is the permit holder has to completely remove from Forest Service lands. That termination provision and the consequences of that is one action that the Forest Service took that should have adequately put plaintiff on notice of an adverse claim. A second part, another provision, are the fee charges that the Forest Service imposed. Starting in 1971, the Forest Service, previously from the original special use permit in 1916, the permit acknowledged that there or recognized that there could be a fee charge for the use value of the land. But in the 1916 permit and up through 1971, the Forest Service exercised its discretion not to impose a charge for the use value of the land. Beginning in 1971, it did impose a charge, and it incorporated that provision into the terms of the 1973 and the 1985 permits. And over that time, it increased the amount that it charged. What's the provision? I have the 1985 one up on my screen here, so I'd like to see what paragraph you're referring to. It is paragraph 2. Paragraph 2. Okay, fine. Of the 1985 permit, where it says there shall be a charge of $15.80 on an annual basis. 73 was the first, or 71 or 73, I guess was the same thing. As far as the permit, 73 was the first time in the permit, and that also is in paragraph 2 of that permit. It is at the Plaintiff's Excerpts of Record, Volume 2, page 42. And that was for the use value of the land. This was not an administrative charge. The plaintiff tries to obfuscate, or not obfuscate, but say that the Forest Service can charge all kinds of fees for administrative services and various other things. But this was a fee for the use value of the land. The plaintiff also says that the Forest Service has statutory authority under a variety of statutes to impose charges, and he cites the 1897 Organic Act that organized, basically, the Forest Service. It is true that the Forest Service does have authority to impose use charges, representing the value use, on use of Forest Service lands, where it is issuing special use permits to do that. In the 1897 Act and 1901 Act and others that he cites are such provisions. But that is where the permission is being given, in the first instance, by the Forest Service. That doesn't apply to statutory easements, unless the statute creating the easement authorizes such a charge. And he also points to the Independent Organizations Agency Act to say that that authority allows charges. But in our view, that allows service charges for services. It doesn't apply to statutory easements. So we do not believe that that statute provided a basis for this charge either. The 1973 regulations make very clear that statutory easements are separate and apart from uses permitted under special use permits. And the plaintiff cites and relies on this statute, or on this 1973 regulation. But I would like to cite the court to 36 CFR 251.1A1 of the 1973 regulations. And this is included as an attachment in the addendum to the government's brief at page 24 of the addendum. And it defines what constitutes special uses. And it says, all uses, and I'm paraphrasing here a bit, all uses excepting those otherwise specifically authorized by acts of Congress shall be designated special uses. So it excludes from the category of special uses acts authorized by Congress. And that is what this 1891 statute is. So when the plaintiff cites regulatory authority, saying what the Forest Service can do to regulate special uses, none of that applies to our situation because he is claiming an easement under a statutory grant, a statute administered by the Interior Department. So what does this regulation prove about easements? It doesn't say anything about easements. No, but it excludes the Forest Service has a whole subsection of regulations that relate to how it goes about regulating special uses, what it characterizes as special uses. And this regulation shows that statutory easements, that is easements specifically authorized, uses specifically authorized by acts of Congress, are not governed by this set of Agriculture Department regulations. Well, it has specific acts in here, but it doesn't really say that if you are claiming an easement by act of Congress, special use permits don't apply. It doesn't really say that. If you look at the statutes that that regulation is referring to, in 251.1A and again in 251.1A3 where it talks about easements, none of those are the kind of easement that the plaintiff here is relying on. The 1891 Act is not referenced in that section at all. It is completely, easements claimed under that statutory provision are completely outside the scope of this regulation. So what I'm saying is to the extent that he says the Forest Service can do all of these things to regulate special uses, the government is saying the special use regulatory provisions do not apply to 1891 Act statutory easements. They're in a different category. So where is that category that says how the government regulates easements or how the government deals with easement owners in terms of the Forest Service? Where do we find that? The Forest Service use books that are portions of which are contained in the record in the addendum speak to that issue. They say that easements are approved by the Department of the Interior after agriculture has had a chance to review them and impose conditions for the protection of Forest Service lands. But not through the use permit system? The conditions would not be imposed through the use permit system? Not through the use permit system. Now, of course, it depends. You just can't lump all easements together because there are many, many different statutes that speak about the authority to grant easements. So you have to look at what was the specific authority under the 1891 Act. For instance, the plaintiff cites to the Federal Land Policy and Management Act, which was enacted in 1976, and the authority granted under that statute to grant easements. That was a wholesale change. That statute repealed all of these earlier easements subject to valid existing rights, and it did allow the Forest Service to impose terms and conditions on those permits. But what he is claiming, what the plaintiff is claiming, is not an easement under the Federal Land Policy and Management Act. He's claiming an easement under the 1891 Act. So you have to look to what is the authority in the 1891 Act, not what the authority is in FLPNA, the Federal Land Policy and Management Act. Thank you, Counselor. You've exceeded your time. Okay. But you may have a moment to wrap up if you'd like. And to our mind, the nail in the coffin here is an October 4, 1996 letter that the Forest Service wrote to the plaintiff that says, separate and apart from the particular provisions of the 1973 and 85 permits, this letter says, we gave you the opportunity to apply for this ditch bill easement under FLPNA. You applied, but you haven't gone forward with that. You need to have an authorization to be on the land. Right now you have that under your special use permit. But you need to have some authorization to be on the land, and that will either come from the special use permit or the ditch bill easement that you have applied for but not yet received. And so in our mind, that was clear notice. The only right that the plaintiff had to be on the land, the only present right the plaintiff had to be on the land, was through the special use permit and not under an 1891 Act easement. Thank you, Counsel. Thank you very much. What was the date of that letter? October 4, 1996. It was issued approximately. Okay, what's the ER site? Do you have it handed? Yes. Okay. It's in the Forest Service's supplemental excerpts of record at 49. Thank you. Thank you, Counsel. That letter was issued one month before. That's okay. Yeah, we got it. Thanks. I appreciate that. I believe, Mr. Jensen, you have some time remaining. I just wish to make a quick point that the Act of 1891 awards an easement. It does not grant fee simple title to the right-of-way holder. He only has a right-of-way or an easement. The underlying property still remains vested in the United States government, and they have the right, power, and authority, and the duty to protect that underlying land and the land around those facilities. So I would continue to represent to the Court that the authority from this Court is simply overwhelming that you cannot operate a vested right-of-way unless you have some sort of permit, authorization, plan of operations, whatever you want to call it, from the United States government, which authorizes and allows that use with appropriate terms and conditions. And allowing that, having the right to regulate, having the power to regulate, also comes with a commensurate power to punish for noncompliance and to ensure compliance. And that's where the Abandonment Clause, the Termination Clause, and various other provisions come into effect to allow the government to have that right to punish and enforce the terms and conditions of its permits. And finally, I would represent also that a fee charged for the easement is not entirely unreasonable. There's nothing in the Act of 1891 itself which demands or requires that the easement be awarded free of charge. Thank you, Counselor. Okay, thank you. We appreciate very much the arguments of both counsel. The case just argued is submitted.
judges: Graber, Fisher, Rawlinson